Andrew G. Gunem (SBN: 354042)
agunem@straussborrelli.com
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Attorney for Plaintiffs and Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DANIEL FONTANA** and **MELISSA SACKETT**, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>**CREDIT SESAME, INC.,**<br><br>                    Defendant. | Case No. 5:25-cv-03479<br><br>**CLASS ACTION COMPLAINT**<br>1. NEGLIGENCE;<br>2. NEGLIGENCE *PER SE*;<br>3. BREACH OF IMPLIED CONTRACT;<br>4. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;<br>5. UNJUST ENRICHMENT;<br>6. CALIFORNIA'S UNFAIR COMPETITION LAW; AND<br>7. DECLARATORY JUDGMENT.<br><br>**DEMAND FOR JURY TRIAL** |

Daniel Fontana and Melissa Sackett ("Plaintiffs"), through their attorneys, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant Credit Sesame, Inc. ("Credit Sesame" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiffs allege the following on information and belief—except as to their own actions, counsel's investigations, and facts of public record.

**NATURE OF ACTION**

1. This class action arises from Defendant's failure to protect highly sensitive data.

2. Defendant is a financial and online banking service provider in California.[1]

3. As such, Defendant store a litany of highly sensitive personal identifiable information ("PII") about its clients. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4. An unauthorized actor gained access to Defendant's systems, allowing cybercriminals unfettered access to Defendant's network and the files stored therein.

5. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former clients' PII.

6. On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII. In short, Defendant's failures placed the Class's PII in a vulnerable position—rendering them easy targets for cybercriminals.

7. Plaintiffs are a Data Breach victims. They bring this class action on behalf of themselves, and all others harmed by Defendant's misconduct.

8. The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before this data breach, its current and former clients' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

**PARTIES**

9. Plaintiff, Daniel Fontana, is a natural person and citizen of Lake Station, Indiana where he intends to remain.

---

[1] Credit Sesame, https://www.creditsesame.com/ (last visited April 21, 2025).

10.    Plaintiff, Melissa Sackett, is a natural person and citizen of Glasgow, Kentucky where she intends to remain.

11.    Defendant, Credit Sesame, Inc., is a stock corporation incorporated under the laws of Delaware and with its principal place of business at 444 Castro Street, Suite 500, Mountain View, CA 94041.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Defendant and Plaintiffs are citizens of different states. And there are over 100 putative Class Members.

13.    This Court has personal jurisdiction over Defendant because Credit Sesame has its principal place of business and/or corporate headquarters in California. Furthermore, Defendant regularly conducts business in California and have sufficient minimum contacts in California.

14.    Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## BACKGROUND

### Defendant Collected and Stored the PII of Plaintiffs and the Class

15.    Defendant is a financial and online banking service provider in California.[2]

16.    As part of its business, Defendant receives and maintains the PII of thousands of its clients.

17.    In collecting and maintaining the PII, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their PII.

---

[2] *Id.*

CLASS ACTION COMPLAINT – 3

18. Under state and federal law, businesses like Defendant have duties to protect their current and former clients' PII and to notify them about breaches.

19. Defendant recognizes these duties, declaring in its "Privacy Policy" that:

    a. "The security of your personal information is important to us;"

    b. "When you enter sensitive information, such as your credit card number, on our order forms, we encrypt the transmission of that information using secure socket layer technology (SSL);" and

    c. "We follow generally accepted industry standards to protect the personal information submitted to us, both during transmission and once we receive it."[3]

***Defendant's Data Breach***

20. On or around April 14, 2025, Defendant notified some clients that it "identified suspicious online activity related to your account."[4]

21. Through Defendant's investigation of the incident, it learned that "there may have been suspicious log-in activity for a limited period of time… which may have resulted in certain user account information being visible to the unauthorized actor."[5] Thus, cybercriminals had unfettered access to Defendant's systems for an unknown period of time.

22. Defendant has not yet revealed the exact types of PII exposed in the Data Breach, however, Defendant has confirmed that sensitive personal information was included in the information compromised during the Data Breach.

---

[3] Privacy Policy, Credit Sesame, https://www.creditsesame.com/legal/privacy-policy/ (last visited April 21, 2025).
[4] Sample Data Breach Notice, Vermont Attorney General's Office, https://ago.vermont.gov/document/2025-04-14-credit-sesame-data-breach-notice-consumers (last visited April 21, 2025).
[5] *Id.*

23.     On or around April 14, 2025, Defendant began notifying Class members about the Data Breach, however Plaintiffs have yet to receive a formal breach notification from Defendant. The sample Breach Notice is attached as Exhibit A.

24.     Defendant's Breach Notice acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, encouraging Plaintiffs and the Class to:

> a.     "remain vigilant against incidents of identity theft and fraud by reviewing your account and monitoring your free credit reports for suspicious activity and to detect errors;" and
>
> b.     "enroll to receive complimentary credit monitoring services."[6]

25.     Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII. And thus, Defendant caused widespread injury and monetary damages.

26.     Defendant has done little to remedy its Data Breach. True, Defendant has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiffs and Class Members for the injuries that Defendant inflicted upon them.

27.     Because of Defendant's Data Breach, the sensitive PII of Plaintiffs and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiffs and Class Members.

28.     Upon information and belief, the cybercriminals in question are particularly sophisticated. After all, the cybercriminals: (1) defeated the relevant data security systems, (2) gained actual access to sensitive data, and (3) successfully accessed data.

---

[6] *Id.*

29.    And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[7]

30.    Thus, on information and belief, Plaintiffs' and the Class's stolen PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

***Plaintiff Daniel Fontana's Experiences and Injuries***

31.    Plaintiff Daniel Fontana has been a client of Credit Sesame for approximately one year and is a Data Breach victim.

32.    Defendant obtained and maintained Plaintiff Fontana's PII.

33.    As a result, Plaintiff Fontana was injured by Defendant's Data Breach.

34.    As a condition of receiving services with Defendant, Plaintiff Fontana and Class Members provided Defendant with their PII. Defendant used that PII to facilitate its provision of services and to obtain payment.

35.    Plaintiff Fontana provided his PII to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff Fontana's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

36.    Through its Data Breach, Defendant compromised Plaintiff Fontana's PII.

37.    Thus, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

38.    Plaintiff Fontana has spent—and will continue to spend—significant time and effort researching the data breach, monitoring his accounts to protect himself from identity theft, and contacting counsel. After all, Defendant encouraged those steps in its breach notice.

---

[7] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

39.     Following the Data Breach, Plaintiff Fontana has been unable to access his accounts with Defendant for approximately three weeks.

40.     And in the aftermath of the Data Breach, Plaintiff Fontana has received multiple letters in the mail regarding his eligibility for out-of-state car loans that he never applied for.

41.     Further, following the Data Breach, Plaintiff Fontana has been notified by Experian that his information has been published on the Dark Web.

42.     Additionally, since the Data Breach, Plaintiff Fontana has suffered from a spike in spam and scam calls and text messages, further suggesting that his information is in the hands of cybercriminals.

43.     On information and belief, Plaintiff's phone number was compromised as a result of the Data Breach, as cybercriminals are able to use an individual's PII that is accessible on the dark web, as Plaintiff's is here, to gather and steal even more information.

44.     Plaintiff Fontana fears for his personal financial security and worries about what information was exposed in the Data Breach.

45.     Because of Defendant's Data Breach, Plaintiff Fontana has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

46.     Plaintiff Fontana suffered actual injury from the exposure and theft of his PII—which violates his rights to privacy.

47.     Plaintiff Fontana suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant were required to adequately protect.

48.     Plaintiff Fontana suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII right in the hands of criminals.

CLASS ACTION COMPLAINT – 7

49.    Because of the Data Breach, Plaintiff Fontana anticipates spending considerable amounts of time and money to try and mitigate his injuries.

50.    Today, Plaintiff Fontana has a continuing interest in ensuring that his PII—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff Melissa Sackett's Experiences and Injuries***

51.    Plaintiff Melissa Sackett has been a client of Credit Sesame since approximately 2017 and is a Data Breach victim.

52.    Defendant obtained and maintained Plaintiff Sackett's PII.

53.    As a result, Plaintiff Sackett was injured by Defendant's Data Breach.

54.    As a condition of receiving services with Defendant, Plaintiff Sackett and Class Members provided Defendant with their PII. Defendant used that PII to facilitate its provision of services and to obtain payment.

55.    Plaintiff Sackett provided her PII to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff Sackett's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

56.    Through its Data Breach, Defendant compromised Plaintiff Sackett's PII.

57.    Thus, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

58.    Plaintiff Sackett has spent—and will continue to spend—significant time and effort researching the data breach, monitoring her accounts to protect herself from identity theft, and contacting counsel. After all, Defendant encouraged those steps in its breach notice.

59.    Following the Data Breach, Plaintiff has been unable to access her accounts with Defendant for over a week.

60. Additionally, since the Data Breach, Plaintiff Sackett has suffered from a spike in spam and scam calls and text messages, further suggesting that her information is in the hands of cybercriminals.

61. On information and belief, Plaintiff Sackett's phone number was compromised as a result of the Data Breach, as cybercriminals are able to use an individual's PII that is accessible on the dark web, as Plaintiff's is here, to gather and steal even more information.

62. Plaintiff Sackett fears for her personal financial security and worries about what information was exposed in the Data Breach.

63. Because of Defendant's Data Breach, Plaintiff Sackett has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

64. Plaintiff Sackett suffered actual injury from the exposure and theft of her PII—which violates her rights to privacy.

65. Plaintiff Sackett suffered actual injury in the form of damages to and diminution in the value of her PII. After all, PII is a form of intangible property—property that Defendant were required to adequately protect.

66. Plaintiff Sackett suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII right in the hands of criminals.

67. Because of the Data Breach, Plaintiff Sackett anticipates spending considerable amounts of time and money to try and mitigate her injuries.

68. Today, Plaintiff Sackett has a continuing interest in ensuring that her PII—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

CLASS ACTION COMPLAINT – 9

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

69.     Because of Defendant's failure to prevent the Data Breach, Plaintiffs and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

    a.    loss of the opportunity to control how their PII is used;

    b.    diminution in value of their PII;

    c.    compromise and continuing publication of their PII;

    d.    out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

    e.    lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

    f.    delay in receipt of tax refund monies;

    g.    unauthorized use of their stolen PII; and

    h.    continued risk to their PII—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fail to take appropriate measures to protect the PII.

70.     Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

71.     The value of Plaintiffsand Class's PII on the black market is considerable. Stolen PII trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

72.     It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

73.    One way that criminals profit from stolen PII is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data—first the stolen PII, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

74.    The development of "Fullz" packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiffs and the Class that is available on the internet.

75.    In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs and other Class Members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

76.    Defendant disclosed the PII of Plaintiffs and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiffs and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

77.    Defendant's failure to promptly and properly notify Plaintiffs and Class Members of the Data Breach exacerbated Plaintiffs and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

78.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

79.    In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[8]

80.    Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack.[9]

81.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Consumers Prioritize Data Security***

82.    In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[10] Therein, Cisco reported the following:

    a.    "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[11]

    b.    "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[12]

    c.    89% of consumers stated that "I care about data privacy."[13]

---

[8] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.

[9] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[10] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited April 19, 2025).

[11] *Id*. at 3.

[12] *Id*.

[13] *Id*. at 9.

CLASS ACTION COMPLAINT – 12

d.    83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[14]

e.    51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[15]

f.    75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[16]

***Defendant Failed to Follow FTC Guidelines***

83.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

84.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[17] The FTC declared that, *inter alia*, businesses must:

a.    protect the personal customer information that they keep;

b.    properly dispose of personal information that is no longer needed;

c.    encrypt information stored on computer networks;

d.    understand its network's vulnerabilities; and

e.    implement policies to correct security problems.

85.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

86.    Furthermore, the FTC explains that companies must:

---

[14] *Id*.

[15] *Id*.

[16] *Id*. at 11.

[17] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

     a.    not maintain information longer than is needed to authorize a transaction;

     b.    limit access to sensitive data;

     c.    require complex passwords to be used on networks;

     d.    use industry-tested methods for security;

     e.    monitor for suspicious activity on the network; and

     f.    verify that third-party service providers use reasonable security measures.

87.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet its data security obligations.

88.    In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former clients' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

89.    Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

90.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

91.     Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

92.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

**CLASS ACTION ALLEGATIONS**

93.     Plaintiffs bring this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII was compromised in the Data Breach discovered by Credit Sesame.

94.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including its staff and immediate family.

95.     Plaintiffs reserve the right to amend the class definition.

96.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

97.     <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

98.     Numerosity. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least thousands of members.

99.     Typicality. Plaintiffs' claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

100.    Adequacy. Plaintiffs will fairly and adequately protect the proposed Class's common interests. Their interests do not conflict with Class Members' interests. And Plaintiffs have retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

101.    Commonality and Predominance. Plaintiffs' and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

      a.     if Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's PII;

      b.     if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

      c.     if Defendant were negligent in maintaining, protecting, and securing PII;

      d.     if Defendant breached contract promises to safeguard Plaintiffs and the Class's PII;

      e.     if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

      f.     if Defendant's Breach Notice was reasonable;

      g.     if the Data Breach caused Plaintiffs and the Class injuries;

      h.     what the proper damages measure is; and

i.    if Plaintiffs and the Class are entitled to damages, treble damages, and or injunctive relief.

102.    <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiffs and the Class)**

103.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

104.    Plaintiffs and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

105.    Defendant owed a duty of care to Plaintiffs and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

106.    Defendant have full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and the Class could and would suffer if their PII was wrongfully disclosed.

107.    Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew

or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiffs and Class Members' PII.

108.   Defendant owed—to Plaintiffs and Class Members—at least the following duties to:

      a.    exercise reasonable care in handling and using the PII in their care and custody;

      b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

      c.    promptly detect attempts at unauthorized access;

      d.    notify Plaintiffs and Class Members within a reasonable timeframe of any breach to the security of their PII.

109.   Thus, Defendant owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiffs and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

110.   Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

111.   Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

112.   Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

113.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII — whether by malware or otherwise.

114.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiffs and Class Members' and the importance of exercising reasonable care in handling it.

115.    Defendant improperly and inadequately safeguarded the PII of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

116.    Defendant breached these duties as evidenced by the Data Breach.

117.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and Class Members' PII by:

   a.    disclosing and providing access to this information to third parties and

   b.    failing to properly supervise both the way the PII was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

118.    Defendant breached its duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiffs and Class Members which actually and proximately caused the Data Breach and Plaintiffs and Class Members' injury.

119.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs and Class Members' injuries-in-fact.

120.    Defendant has admitted that the PII of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

CLASS ACTION COMPLAINT – 19

121.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

122.    And, on information and belief, Plaintiffs' PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

123.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On Behalf of Plaintiffs and the Class)

124.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

125.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

126.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs and the Class Members' sensitive PII.

127.    Defendant breached its respective duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

---

CLASS ACTION COMPLAINT – 20

128.     Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

129.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and members of the Class.

130.     But for Defendant's wrongful and negligent breach of its duties owed, Plaintiffs and Class Members would not have been injured.

131.     The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant were failing to meet its duties and that its breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

132.     Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

133.     As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### **THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

134.     Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

135.     Plaintiffs and Class Members were required to provide their PII to Defendant as a condition of receiving services provided by Defendant. Plaintiffs and Class Members provided their PII and payments to Defendant in exchange for Defendant's services.

136.    Plaintiffs and Class Members reasonably understood that a portion of the funds they paid would be used to pay for adequate cybersecurity measures.

137.    Plaintiffs and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

138.    Plaintiffs and the Class Members accepted Defendant's offers by disclosing their PII and payments to Defendant in exchange for services.

139.    In turn, and through internal policies, Defendant agreed to protect and not disclose the PII to unauthorized persons.

140.    In its Privacy Policy, Defendant represented that it had a legal duty to protect Plaintiffs' and Class Member's PII.

141.    Implicit in the parties' agreement was that Defendant would provide Plaintiffs and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

142.    After all, Plaintiffs and Class Members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

143.    Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

144.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to its terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

145.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

146.    Defendant materially breached the contracts it entered with Plaintiffs and Class Members by:

      a.    failing to safeguard their information;

      b.    failing to notify them promptly of the intrusion into their computer systems that compromised such information.

      c.    failing to comply with industry standards;

      d.    failing to comply with the legal obligations necessarily incorporated into the agreements; and

      e.    failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, received, maintained, and transmitted.

147.    In these and other ways, Defendant violated their duty of good faith and fair dealing.

148.    Defendant's material breaches were the direct and proximate cause of Plaintiffs' and Class Members' injuries (as detailed *supra*).

149.    And, on information and belief, Plaintiffs' PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

150.    Plaintiffs and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

## FOURTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiffs and the Class)

151.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

152.    Under California law, every contract imposes on each party a duty of good faith and fair dealing in each performance and their enforcement. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means

CLASS ACTION COMPLAINT – 23

preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to their form.

153.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

154.    Here, Plaintiffs and Defendant entered into a contract (implied in law, fact, or otherwise) whereby Defendant agreed to:

    a.    use a portion of the payments provided by Plaintiffs and Class Members to pay for adequate cybersecurity measures;

    b.    use adequate cybersecurity measures as required by state law, federal law, and Defendant's contractual agreements (implied or otherwise); and

    c.    notify them promptly of any exposure of their PII.

155.    As current and former clients, Plaintiffs and Class Members fully fulfilled their contractual obligations when they provided their PII to Defendant.

156.    Furthermore, the conditions precedent (if any) to Defendant's performance have already occurred.

157.    Defendant unfairly interfered with the Plaintiffs' and Class Members' rights to receive the benefits of the contract—and breached the covenant of good faith and fair dealing—by, *inter alia*:

    a.    failing to safeguard their information;

    b.    failing to notify them promptly of the intrusion into their computer systems that compromised such information.

    c.    failing to comply with industry standards;

    d.    failing to comply with their legal obligations; and

    e.    failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, received, maintained, and transmitted.

158.     Defendant's material breaches were the direct and proximate cause of Plaintiffs' and Class Members' injuries (as detailed *supra*).

### FIFTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

159.     Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

160.     This claim is pleaded in the alternative to the breach of implied contract claim.

161.     Plaintiffs and Class Members conferred a benefit upon Defendant. After all, Defendant benefitted from (1) using their PII to provide services, and (2) the payments provided.

162.     Defendant appreciated or had knowledge of the benefits it received from Plaintiffs and Class Members.

163.     Plaintiffs and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

164.     Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII.

165.     Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

166.     Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' and Class Members' (1) PII and (2) payments because Defendant failed to adequately protect their PII.

167.     Plaintiffs and Class Members have no adequate remedy at law.

168.    Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiffs and Class Members—all unlawful or inequitable proceeds that they received because of its misconduct.

**SIXTH CAUSE OF ACTION**
**Violation of California's Unfair Competition Law (UCL)**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of Plaintiffs and the Class)**

169.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

170.    Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

171.    Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA") and the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq*. (the "CRA"), and other state data security laws.

172.    Defendant stored the PII of Plaintiffs and the Class in its computer systems and knew or should have known that they did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiffs' the Class's PII secure to prevent the loss or misuse of that PII.

173.    Defendant failed to disclose to Plaintiffs and the Class that their PII was not secure. However, Plaintiffs and the Class were entitled to assume, and did assume, that Defendant had secured their PII. At no time were Plaintiffs and the Class on notice that their PII was not secure, which Defendant had a duty to disclose.

174.    Defendant also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiffs' and the Class's nonencrypted and nonredacted PII.

175.    Had Defendant complied with these requirements, Plaintiffs and the Class would not have suffered the damages related to the data breach.

176.     Defendant's conduct was unlawful, in that they violated the CCPA.

177.     Defendant's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, inter alia, Section 5(a) of the Federal Trade Commission Act.

178.     Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

179.     Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting PII.

180.     Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

181.     Instead, Defendant made the PII of Plaintiffs and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiffs and the Class to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

182.     As a result of those unlawful and unfair business practices, Plaintiffs and the Class suffered an injury-in-fact and have lost money or property.

183.     For one, on information and belief, Plaintiffs' and the Class's stolen PII has already been published—or will be published imminently—by cybercriminals on the dark web.

CLASS ACTION COMPLAINT – 27

184.    The injuries to Plaintiffs and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

185.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

186.    Therefore, Plaintiffs and the Class are entitled to equitable relief, including restitution of all monies received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

### SEVENTH CAUSE OF ACTION
**Declaratory Judgment**
**(On Behalf of Plaintiffs and the Class)**

187.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

188.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

189.    In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiffs alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiffs and Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

190.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      a.    Defendant owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

      b.    Defendant have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

  c. Defendant breached, and continue to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

  d. Defendant's breach of its duties caused—and continue to cause—injuries to Plaintiffs and Class Members.

191. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

192. If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experience a second data breach.

193. And if a second breach occurs, Plaintiffs and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiffs and Class Members' injuries.

194. If an injunction is not issued, the resulting hardship to Plaintiffs and Class Members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

195. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class Members, and the public at large.

## PRAYER FOR RELIEF

Plaintiffs and Class Members respectfully request judgment against Defendant and that the Court enter an order:

  A. Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representative, and appointing their counsel to represent the Class;

  B. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiffs and the Class;

C.    Awarding injunctive relief as necessary to protect the interests of Plaintiffs and the Class;

D.    Enjoining Defendant from further unfair and/or deceptive practices;

E.    Awarding Plaintiffs and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.    Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G.    Awarding attorneys' fees and costs, as allowed by law;

H.    Awarding prejudgment and post-judgment interest, as provided by law;

I.    Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.    Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all claims so triable.

Dated: April 21, 2025                    Respectfully Submitted,

By: */s/ Andrew G. Gunem*
    Andrew G. Gunem (SBN 354042)
    agunem@straussborrelli.com
    STRAUSS BORRELLI PLLC
    980 N. Michigan Avenue, Suite 1610
    Chicago, IL 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109

    *Attorneys for Plaintiffs and the Proposed Class*